1          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF NEW YORK
2
WILLIAM A. HILL, ET AL.        :
3                                :
         vs.                     :
4                                :
DELAWARE NORTH COMPANIES        :
5 SPORTSERVICE, INC.            :      1:11 CV 753

6

7

8

     Telephone conference in the above-captioned matter held
9
 Tuesday, April 10, 2013, commencing at 11:04 a.m., before
10
 the Honorable Jeremiah McCarthy, in the United States
11
 Courthouse, 2 Niagara Square, Buffalo, New York, 14202.
12

13

14

15 APPEARANCES:

16             GARY F. LYNCH, ESQ., 36 North Jefferson Street,
              New Castle, PA, appeared for plaintiff.
17
              ROBERT W. PRITCHARD, ESQ., 625 Liberty Ave.,
18             Pittsburgh, PA, appeared for Delaware North.

19             MARIE C. BRUCE, ESQ., and JAMIE B. EISENBERG,
              ESQ., 7979 Old Georgetown Rd., Bethesda, MD,
20             appeared for Baltimore Orioles.

21

22

23

             RECORDED BY ELECTRONIC SOUND RECORDING
24      TRANSCRIBED BY DEBRA L. POTOCKI, RMR, RDR, CRR
         Official Court Reporter for the U.S. District Court
25                      843/723-2208

1          THE CLERK:  We're on the record in Hill versus

2    Delaware North Companies, Inc., Case No. 11-CV-753.  For

3    plaintiffs, Gary F. Lynch; for defendant, Robert William

4    Pritchard; for the intervenor Baltimore Orioles, Jamie

5    Eisenberg and Marie Celeste Bruce.

6       We are here for a telephonic status conference before the

7    Honorable Jeremiah J. McCarthy.

8          THE COURT:  Good morning, counsel.

9          MR. LYNCH:  Morning, Your Honor.

10         MS. BRUCE:  Morning, Your Honor.

11         THE COURT:  Can everybody hear me?

12         MS. EISENBERG:  Yes, sir.

13         THE COURT:  Okay.  Let's see.  First of all, I did

14   receive an e-mail from Mr. Pritchard, I believe, indicating

15   that the -- or my -- Mr. Yusick of my chambers received it --

16   indicating that the parties, including the Orioles, had agreed

17   on the language of a stipulated amended protective order.  And

18   he sent that to us.  That was his e-mail of April 2nd.  So I

19   just want everybody to confirm that that is correct.  If so,

20   I'll sign that.

21         MR. LYNCH:  Yes, Your Honor.  This is Gary Lynch for

22   the plaintiff.  That's fine with us.

23         THE COURT:  Okay.  And let's see.  Ms. Eisenberg and

24   Ms. Bruce, is that -- even though you're not signators to it,

25   have you reviewed it?

1      MS. EISENBERG:  Yes, sir, we reviewed it.  All of the

2  parties, the nonparties reviewed it, including Miss Hahn.  She

3  e-mailed me back and said if the Orioles were fine with the

4  language, then so was MSA.  So we all are on the same page,

5  Your Honor.

6      THE COURT:  All right.  So I'll sign that and we'll

7  docket that.

8    Now, then Mr. Lynch had sent me a letter dated April 2nd,

9  copying everyone, I believe, and listing portions of the

10  contracts that he wanted to review.  And I think we originally

11  had this conference scheduled for last week, and then at

12  Miss Bruce's request we put it off so that she would have an

13  opportunity to further consider that letter.

14    Where do we stand on that request?

15      MR. PRITCHARD:  Your Honor, this is Rob Pritchard

16  speaking for defendant.  We have had a chance to review the

17  additional requests, and also I've consulted with Miss Bruce

18  that, again, just speaking for defendant, we said that we've

19  objected to plaintiffs' request, and conveyed that objection

20  to Mr. Lynch.  We believe that the additional provisions of

21  the agreement that have been requested are not relevant to the

22  disputes at issue in this case.  And being mindful of the --

23  in terms of the Orioles with respect to limiting the

24  production to only things that are relevant, and their prior

25  stated concerns about confidentiality, and have stated our

1    objections to the additional production.  And I'd be happy to

2    chat in some detail, if you'd like, about why we think the

3    additional provisions are not relevant.

4         THE COURT:  Did you send him a letter or how did you

5    communicate?  Because I haven't seen anything.

6         MR. PRITCHARD:  I spoke with Mr. Lynch by telephone

7    last week and then followed up yesterday by e-mail with a

8    detailed explanation as to each section, and then our position

9    on each.  But we had a chance to chat last week about it.

10        THE COURT:  Okay.  Because -- now I wasn't copied on

11   that, was I?  I don't recall having seen anything.

12        MR. PRITCHARD:  That's correct.

13        THE COURT:  All right.  Well, Mr. Lynch, I take it

14   you disagree with their objections?

15        MR. LYNCH:  Yes, I do, Your Honor.

16        THE COURT:  I'm trying to -- you know, you all are

17   more familiar with the details of the case and what's relevant

18   and what's not than I am.  And I'm trying to come up with a

19   way that we can put this in a concrete context.

20        Mr. Lynch, I mean, your letter does make some explanation

21   of why you feel they're relevant.

22        One thing that had occurred to me is the possibility that

23   the parties go forward as best they can in trying to address

24   these issues, and then, Mr. Lynch, when you tell me, or if you

25   get to a point where absent the agreements, you find yourself

at a roadblock, might be easier for me at that point to understand why exactly you need this information. If it were, for example, put to me in the context of a dispositive motion, either that Delaware North is making a dispositive motion or you are, and one party or the other says, well, the information that would be directly relevant to this issue is in the lease agreement or the concession agreement, and here's why I need it. I mean, there must be some other ways of getting at least some of this information without going to the agreements themselves.

I note that you point out in your letter that some of the information referred to in, I guess, Sections 4.01 through 4.04, apparently, according to you, have been published or discussed elsewhere. It's difficult for me as I sit here to jump into this and say, well, I think you need this and I don't think you need this, without maybe having a more concrete context.

And if the parties need, because of this dispute, if the parties feel they need an adjustment to the deadlines of the case management order until we can flesh that out, that's fine. But I just feel a little bit at sea in trying to determine, you know, exactly which portions might be relevant and which might not be.

Anybody want to comment on that?

MR. PRITCHARD: This is Rob Pritchard. I do have a

suggestion, and it's the one I discussed with Mr. Lynch last week and put in an e-mail as well. And that is twofold. First, a lot of the requests seem to be seeking information about the entirety of the Camden Yard site, which it was called in 1992, but now is referred to as the Camden Yards Sports Complex. If you're not familiar with this part of Baltimore, it is not just Oriole Park, but it also includes the Baltimore Ravens football stadium and parking lot and other things not at issue in the case that aren't served by the defendant in the concession there. And it would seem that that level of discovery is seeking information about a much broader facility or establishment that is being placed at issue in this case.

The defendant contends that it's Sportservice's operation at Oriole Park that provide the relevant universe for information, and we're certainly willing to set it in writing, we'll state in a stipulation, if need be.

And because it is defendant's exemption to prove, if we're wrong, and if the proper establishment under the law is the entirety of the Camden Yards site, then we won't be able to meet our burden, because we are taking it upon ourselves to limit our production of evidence to the operations at Oriole Park.

So I think that might take care of a large percentage of these requests, which goes towards operations on a much more

1    broad footprint than just the ballpark itself.

2         But secondly, and I think more importantly, at best, the

3    information sought from this 1992 lease agreement relates to

4    the terms, and you have the unredacted version, see for

5    yourself, it goes toward various financial negotiated terms

6    between the Orioles and the Maryland Stadium Authority which,

7    at best, provides clues as to how various taxes or rent

8    payments might be calculated, which goes toward plaintiffs'

9    argument that the receipts of the Orioles are a relevant

10   consideration with respect to the application of the

11   exemption.  Of course, defendant disagrees with that

12   characterization about relevance, but under plaintiffs' theory

13   of the case, the receipts of the Orioles are relevant.  And

14   that is their theory of the case.

15        But at best, the production of the lease would provide

16   some clues, and don't provide the actual facts as to the

17   amount of those receipts.  The details of the amount of those

18   receipts for the relevant period, which begins in 2010, much

19   after the 1992 lease agreement, will only be obtained in this

20   case, if at all, via third-party discovery.  The defendant

21   does not possess that information; the Orioles likely do

22   possess that information.

23             THE COURT:  I'm sorry, you say the Orioles what?

24             MR. PRITCHARD:  Possess that information.  Mr. Lynch,

25   ultimately his goal is to find out information about the

1  Orioles' receipts, how much money they earned by ticket sales

2  and advertising and parking and any of the other things that

3  he mentions in his e-mail, or in his letter.  He's not going

4  to get that information from the lease.  He's going to have to

5  get that information from third-party discovery, which hasn't

6  been commenced yet.  There's been no service of subpoenas, as

7  far as I know, on the Orioles.

8      And ultimately, so my suggestion is along the lines of

9  what you were suggesting earlier, that this is going to come

10  to a head in the discovery process.  It won't be something

11  that needs to wait for dispositive motions.  Plaintiff needs

12  to commence the third-party discovery seeking that

13  information, and then we can litigate in that setting the

14  questions of relevance with respect to Oriole's receipts and

15  that sort of thing, that I'm sure will be zealously litigated

16  in that context.

17      But to receive calculation -- or formulas from 1992 about

18  how a rent payment might be calculated based upon a luxury

19  box, isn't going to provide Mr. Lynch with the information he

20  ultimately thinks he needs to prove his case.

21      So what I would suggest is that plaintiffs go ahead and

22  commence the third-party discovery that they're seeking.

23  We've actually commenced some third-party discovery ourselves,

24  and are awaiting that information.  Plaintiffs should be free

25  to go ahead and do that.  And within that context, we'll have

1   this discussion and it will be appropriately framed.

2        But to look at a paragraph from 1992 about how rent is

3   going to be calculated based upon a billboard that might be

4   out in left field, isn't going to teach us anything about what

5   the receipts of the Orioles were in 2010.

6        And if it does at some point, if Mr. Lynch can make the

7   case that he now has obtained certain information through

8   third-party discovery, and now he needs the lease agreement to

9   help make sense of the numbers, then we can have this

10  discussion.  But at this point it seems entirely premature to

11  seek that information, in light of the fact that he hasn't

12  even commenced that third-party discovery.

13       So my suggestion would be, A, that I'm happy to stipulate

14  with Mr. Lynch that the establishment that we intend to prove

15  the defense with is Oriole Park, or is the Sportservice

16  Operations at Oriole Park, and not Camden Yards more broadly;

17  and B, that he should go ahead and at least commence that

18  third-party discovery effort, so that we can frame the

19  relevant question in the more appropriate place.

20            THE COURT:  All right.  Mr. Lynch, before I hear back

21  from you, Miss Bruce or Miss Eisenberg, do you want to weigh

22  in at all?

23            MS. EISENBERG:  Your Honor, just to -- I don't want

24  to repeat what Mr. Pritchard has said, but I think what is the

25  operating issue here, my lease is an expense.  It's our

expense. There's not a dime or a dollar of receipt that is in my lease, obviously, because it fluctuates by year to year. As you can see by looking at the document, I do not pay a flat firm every year in rent to the MSA. And even if I did, that's still not the Orioles' receipts, that's simply on the expense side of the ledger.

So every one of these requests, other than the geographical identification of the entire Camden Yards site, has to do with Orioles' expenses, not Orioles' receipts.

And again, I don't portend to understand all of the nuances of the parties' claims in this case, but the relevant statute as I have read it, indicates that it's a receipts test, not an expense test.

So the idea -- the other thing I wanted to point out, Your Honor, as Mr. Pritchard indicates, you can't get back into the Orioles' receipts by looking at how the rent formula is constructed. It's an impossibility. The only number that is capable of being backed into, and you don't need my lease for this, because it's a statute in the State of Maryland, are admissions taxes. The admissions taxes are statutorily defined, and the MSA reports on its annual fiscal annual basis what its annual admissions taxes received are, and you can come up with that number. But that's the only number that you can get, and you don't need that lease for that, because it's reported by the MSA and it's part of the statute in the

1  Maryland Code.

2      So I wanted to point that out to you, that how we

3  calculate rent is not relevant to a discussion on what money

4  is received, and to what avenues that money is received.  So

5  all of these provisions that are being sought, again, other

6  than the geographical identification of Camden Yard, have to

7  do with the Orioles' expenses and not receipts.

8      With regard to the geographical rotation, as

9  Mr. Pritchard, I'm assuming he has the right to frame how his

10 defense goes forward, but just for everyone's edification, the

11 Maryland Stadium Authority's annual reports clearly identify

12 what is the Camden Yard site.  And it goes on for pages and

13 pages identifying what is included in the site, what is done

14 in that site, how it's operated, all 85 acres of that site

15 that is owned by the State of Maryland.

16     So to the extent that there's a stated need to understand

17 what the Camden Yard site is, what it may have been in 1992 is

18 not what it is as it exists in 2010 or in 2014.  The best

19 place for that is to go to the Maryland Stadium Authority's

20 annual report, and you can look through it just like anybody

21 else and identify what is part of the Camden Yard site.

22     So I just wanted to make those two points.  Otherwise, you

23 know, we agree that -- and I'll state this for the record,

24 Your Honor, Mr. Pritchard's client does not have the Orioles'

25 receipts numbers.  The only numbers that Mr. Pritchard's

1  client has are the revenues that are generated by his client,

2  the concessionaire.  Other than that, the Orioles do not

3  provide our receipt numbers to our concessionaire.

4         THE COURT:  All right.  And then I presume that if

5  Mr. Lynch does commence nonparty discovery and asks for the

6  Orioles' receipts, you're going to object to it, right?

7         MS. EISENBERG:  I would object to the information

8  depending how the question is phrased.  For instance, if

9  Mr. Lynch asks me what was paid in admissions tax for these

10  years, there's no reason not to tell him, because it's

11  reported by the Maryland Stadium Authority.  However, if

12  Mr. Lynch is going to ask for a breakdown of my receipts

13  across various income-producing mechanisms within Oriole Park

14  at Camden Yards, then yes, the Orioles will object to any

15  information that requires us to provide numbers that are not

16  in the public domain.  And by that I mean obviously the

17  Orioles' rent payment, although not our receipts, are in the

18  public domain.  My receipts, however, other than admissions,

19  are not in the public domain.

20         THE COURT:  But I think the test for the statute, you

21  know, for a determination whether the exemption applies, I

22  believe is going to go not so much to the actual amount of any

23  receipts, but as to the timing of them, and how many months of

24  the year and so forth.  So --

25         MS. EISENBERG:  Understood.

1          THE COURT:  We may, down the road, be able to fashion

2    a methodology that protects Mr. Lynch's ability to make that

3    argument, and Mr. Pritchard's ability to make that argument

4    without disclosing a specific dollar amount.

5          I don't know; it just seems to me that we need to -- and

6    without prejudice to the possibility, Mr. Lynch, of you

7    getting further information on these contracts, it seems to me

8    that at this point we need to go in the direction of what

9    Mr. Pritchard says, which is actually making the attempt at

10   third-party discovery to get what you need to make your

11   arguments, and then -- on receipts -- and if there's objection

12   to that, I'll decide it in that concrete context.

13          MR. LYNCH:  Your Honor, if I could respond?

14          THE COURT:  Yes.

15          MR. LYNCH:  It's counterintuitive to me for somebody

16   challenging relevancy for discovery purposes to suggest the

17   information is available from a third party.  We have a

18   defendant that has information in its possession that -- and

19   you can reasonably infer from what we just heard from both the

20   Orioles and the defendant, in suggesting the information could

21   be ascertained from other people, they must be conceding the

22   relevance of it.  I mean, I don't see how it's an objection to

23   relevance to say go get it somewhere else.

24          THE COURT:  No, what he's saying, if I understood him

25   correctly, is that I don't have the information as to the

receipts; the Orioles have them.  If you want the information

as to receipts, and that's the relevant information, then go

get it from the Orioles, because I don't have it.  That's --

MR. LYNCH:  We intend to do that.

THE COURT:  I understand, but that's, I think that's

what he's -- that's all I heard him say.  Now, he didn't say

it's not relevant, he said I don't have it, and it's not

going to be disclosed by the lease or the concession

agreement.  All those set forth are formulas.  So if you want

the information as to the actual receipts, you've got to go

get that from the Orioles.

MR. PRITCHARD:  If I could just clarify my position,

which I think you captured pretty well there, Judge, but we

actually -- we don't agree that the receipts of the Orioles

are relevant, but just to clarify, my position is that, A, the

receipts of the Orioles are not relevant, but B, as it

pertains to this particular dispute about the lease agreement

provision, is that production of the lease agreement

provisions aren't even relevant to proving receipts.  So it's

like a second step of lack of relevance.

What we suggested, and what I heard you -- and this is

where I think we're on the same page -- is that the plaintiff

needs to commence third-party discovery to seek the actual

ultimate information he thinks he needs.  We may have a

relevance -- we anticipate having a relevance discussion in

1    that context.  And taking you up on your earlier suggestion

2    that we need to get the case into the right context before

3    this discussion could be fully hashed out, our suggestion was

4    that plaintiff needs to commence that third-party discovery to

5    seek the actual information he needs, which we don't have,

6    which the Orioles apparently, I assume, do have, and then we

7    can have the discussion.

8         But ultimately our position will be that the receipts of

9    the Orioles are actually not even relevant to the discussion

10   of the exemption, the applicability of the exemption.  But

11   plaintiffs, their theory of the case is that those receipts

12   are relevant, and that's why our suggestion is just that we

13   postpone that discussion until plaintiffs actually serve that

14   subpoena and we can see what it is they want.

15              MR. LYNCH:  Your Honor, could I finish responding?

16              THE COURT:  Yes.

17              MR. LYNCH:  Your Honor, we are not seeking the actual

18   information regarding the receipts of the Orioles in

19   requesting that these redactions be released in the

20   information provided to us.  There are many other variables

21   involved with the exemption that the defendant is attempting

22   to assert here, and our prospective challenge of that

23   exemption.  And these two documents are integral to that

24   challenge that we intend to make.  It is not just based upon

25   the information financially from the Orioles and what their

actual receipts are. That is not indicated in these documents. We will seek that information from a third-party source, just like the Orioles. But that's not what's at issue here. The redactions that we're challenging right now pertain to many other factors of this exemption. I think it's unavoidable, Your Honor, that we have to go through the exemption and start to discuss what it is the information that we're seeking, and how it does tie into the exemption that they're going to assert.

Mr. Pritchard said, well, we think the relevant establishment for this exemption is just their operations at the Oriole Park. Just so -- I think Rob explained this, but let me just make sure we all understand it, because I don't think we are all that familiar with where the Orioles play and where the Ravens play. There are two stadiums there. They refer to the entire complex there as Camden Yard. They refer to the stadium or the ballpark where the Orioles play as Oriole Park. To determine whether or not the exemption applies for the defendant here, we first have to establish -- or determine what the establishment is, it's going to be deemed to be the amusement or recreational establishment. That's their affirmative defense. There's no question that they're the ones that are initially going to take a position on what that establishment is. But once they take that position, it's our prerogative and our right in this lawsuit

1   to challenge whether that's the appropriate establishment or

2   not, before we even get into applying secondary -- the two

3   tests, whether it's seven months or more in terms of the

4   receipts and whether they're weighed inappropriately for the

5   exemption to apply.  You first have to define the

6   establishment.

7       No question that the defendant is going to be the first

8   entity to take a position on that.  Once they do though, we're

9   going to challenge that most likely.  Because they're going to

10   take a position that defines the establishment in a way that

11   helps their case.  Our job, obviously, in representing our

12   clients, is to challenge that analysis in a way that helps our

13   position and our case.

14       To say, as Mr. Pritchard did, that we don't think it's the

15   entire Camden Yards facility, and if it is the Camden Yards

16   facility, then we don't think the exemption will work, that

17   does not concede away our ability to get this information.

18   Because we have to prove that if.  The if that he is throwing

19   out there is an if that I have to prove in my case.  The

20   information that he's trying to avoid providing by throwing

21   that concession out there, doesn't work.  I mean, I'm not

22   going to be able to prove this, if I don't have this

23   information.  So it doesn't do any good to say, well, if it's

24   Camden Yards, then the exemption clearly doesn't apply.  We

25   think it's the Oriole Park.  But if it's Camden Yards, the

1    exemption doesn't apply.  That's what their position is.

2        I can't prove the if until I get this information.  That's

3    not fair for them to say, well, if that's what it is, we'll

4    concede the exemption doesn't apply.  Because they know we're

5    never going to be able to prove that without getting what

6    these lease agreements say about how the facility is defined,

7    and who does what in different geographic locations of the

8    facilities.  That's what's at issue here.

9            THE COURT:  It seems to me, Mr. --

10            MR. LYNCH:  This information, to be candid, Your

11    Honor, this information couldn't be more relevant to this

12    lawsuit.  These are the essential terms of the relationships

13    between the three parties that are involved in this facility,

14    the Orioles, the Maryland Stadium Authority and the defendant

15    here.  These are the documents that dictate how the facility

16    is laid out, what the operations are and who does what.  These

17    are the documents I have to look to when I have to determine

18    whether the exemption applies.

19            THE COURT:  Counsel, Mr. --

20            MR. LYNCH:  It couldn't be more relevant.

21            THE COURT:  Mr. Lynch, okay, I hear what you're

22    saying.  I do have another matter coming on at 11:30.  Let me

23    just say this.  I see what you're saying, I see what both

24    sides are saying.  It seems to me that conceptually that if

25    there is information, it's going to be Mr. Pritchard's burden

on asserting this defense.  And, Mr. Lynch, if there is

information that you can show me that you legitimately need to

challenge that defense, and that information is not able to be

produced, because Mr. Pritchard's client has bound themselves

to confidentiality, or it's otherwise confidential, then I

think Mr. Pritchard is going to lose on that defense.  If, on

the other hand, it can be produced or it can be produced under

some terms that are acceptable to everybody, then he may

prevail, or he may lose for other reasons.  But that, I guess,

is the way I see things eventually shaking out.

Now, maybe that's too simplistic, but I agree with you,

Mr. Lynch, that you can't be deprived of information that you

need to challenge -- that you legitimately need to challenge

the defense.  But at this point I still have difficulty seeing

how all this may be relevant.  It may well be, but I think

what I need to see is things put in a more concrete context.

So I'm leaning toward, and I'm going to take another look

at it, but I'm leaning toward at this point denying your

motion to compel, without prejudice to renewal down the road

when things have firmed themselves up a little bit.  I would

suggest that in the interim you, you know, you go forward and

start making your third-party requests for other information.

I presume we're going to have other objections, and then we'll

see where we go from there.  All right?  I'm going to hold the

deadlines of the case management order in abeyance.  And I'll

get out some brief decision in this regard.  But that's the way I see things progressing at this point.  Okay?  So nobody wins, nobody loses as of today, but I'm just suggesting that we let things percolate a little more.  All right?

MS. EISENBERG:  Thank you, Judge.

THE COURT:  Thank you.


(Court adjourned at 11:32 a.m.)

REPORTER'S CERTIFICATION

        I, Debra L. Potocki, RMR, RDR, CRR, Official Court
Reporter for the United States District Court for the District
of South Carolina, hereby certify that the foregoing is a true
and correct transcript of the electronically recorded above
proceedings, to the best of my ability.



S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR